UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| L.P., by and through her father, J.P., individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>BCBSM, Inc., d/b/a<br>Blue Cross and Blue Shield<br>of Minnesota,<br><br>      Defendant.<br>_____/ | Case No.<br><br>**CLASS ACTION**<br><br>COMPLAINT FOR VIOLATION OF:<br><br>1) 29 U.S.C. §1132(a)(1)(B)<br>2) 29 U.S.C. §1132(a)(3) |

**NOW COMES** Plaintiff L.P., by and through her father, J.P., who, on her own behalf and on behalf of all others similarly situated, asserts to the best of her knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the following:

## INTRODUCTION

1. This action, brought under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1191c arises from defendant BCBSM, Inc.'s ("BCBSM" or "Blue Cross") practice of reducing insureds' covered benefits by amounts that Blue Cross claims – without adjudication and without proper notice - it overpaid to the same insured for <u>unrelated</u> health care expenses. Offsetting in this manner is permitted only when an insurer's ERISA-regulated plan authorizes it. Blue Cross's language, which is standardized among its various insurance products, does not.

534080.2

## JURISDICTION AND VENUE

2. This Court has jurisdiction in this ERISA matter via 28 U.S.C. § 1331.

3. Venue is appropriate in this district because Plaintiff and defendant are either citizens of this judicial district and/or may be found here, and many of the breaches at issue took place here. 29 U.S.C. § 1132(e)(2).

4. In conformity with 29 U.S.C. § 1132(h), Plaintiff served the original Complaint by certified mail on the Secretary of Labor and the Secretary of the Treasury.

## PARTIES

5. At relevant times J.P. was a full-time employee of Bolton & Menk, Inc., an engineering firm with headquarters in Mankato, MN. While employed at Bolton & Menk, J.P. lived in Nicollet County, within this judicial district. His employer-sponsored health insurance at issue in this litigation was administered by defendant Blue Cross and Blue Shield of Minnesota and is regulated by ERISA, 29 U.S.C. §§ 1001-1191c. Under ERISA, J.P. is a "plan participant" (29 U.S.C. § 1002(7)). A copy of the insurance plan is attached at **Exhibit A** to this Complaint; it is a boilerplate document whose material terms are identical for all similar insureds.

6. Defendant BCBSM. Inc. is a non-profit company incorporated in Minnesota with its principal place of business located within this judicial district. In this Complaint, "Blue Cross" or "BCBSM" refers to the named defendant and all related, successor, predecessor, parent and subsidiary entities to which these allegations pertain.

7. Blue Cross had full discretionary authority to administer and pay benefits under the plan and accordingly owes fiduciary obligations to plan participants and beneficiaries.

## FACTS

8. J.P.'s daughter, L.P., who was covered under J.P.'s plan and is thus entitled to receive health insurance coverage based on the same plan language as her father, has struggled for years with mental health issues such as depression, suicide ideation, self-harm and reactive attachment disorder. On June 30, 2016, after counseling, hospitalization, and other therapies had not been successful, L.P. was sent for medically necessary treatment to Change Academy at Lake of the Ozarks, Inc., a residential treatment center licensed as such by the state of Missouri. J.P. is L.P.'s legal guardian and conservator, per court order.

9. Change Academy is an intermediate health care program licensed by the state of Missouri as a "Residential Treatment Agency for Children and Youth." Missouri maintains staffing, programming, safety, training, and enrollment standards as part of this licensure.

10. L.P. was treated at Change Academy from June 30, 2016 to November 6, 2017. J.P. personally paid $189,477.74 for services rendered at Change Academy. Blue Cross reimbursed J.P. a total of $70,786 for those charges.

11. L.P. was a minor when the services at Change Academy began.

12. Sometime in mid-November 2018, J.P. received the explanation of benefits packet attached at **Exhibit B** to this Complaint. The packet itself is dated November 15,

2018 and refers to therapeutic services L.P. recently received. *These services were not rendered from Change Academy.*

13. On page 3 of the packet, Blue Cross states that it has applied what it describes as an "Offset Amount" of $440. Beneath that indication, found in a summary box, is this sentence: "You have satisfied $440.00 of the $5550.00 amount owed."

14. In response to his receipt of this packet, J.P. telephoned Blue Cross's customer service line. After several days of telephone contact with Blue Cross customer support, J.P. was told by Blue Cross's representatives that the $440 was applied by Blue Cross to the refund that Blue Cross claims it is owed arising from its partial payment for services rendered at Change Academy. Further, J.P. was told that there are 14 previously paid claims, all generated by L.P. when she was being treated at the residential treatment center, for which Blue Cross intends to offset.

15. J.P. received a second explanation of benefits packet from Blue Cross dated December 5, 2018 (**Exhibit C**). This packet referred to covered services received by J.P.'s wife and L.P.'s mother, who – like L.P. – is covered for health insurance under her Bolton and Menk's health plan. On page 3 of the packet, Blue Cross states that it has reduced her claim for covered benefits by $176 to "appl[y] to the refund requested from you by us." Though it is otherwise unexplained, J.P. is aware of no other disputed claim; it thus appears that L.P.'s right to covered benefits is offset by those amounts Blue Cross claims it overpaid her daughter.

16. On information and belief, Blue Cross relies on language in the Summary Plan Description governing the Bolton & Menk's plan stating that *"Payments made in error or overpayments may be recovered by the Claims Administrator as provided by law."*

17. There is no legal authority permitting the Claims Administrator to offset alleged overpayments from plan benefits in the manner that Blue Cross has offset benefits in this case.

## CLASS ALLEGATIONS

18. L.P., through J.P., brings this lawsuit under Fed. R. Civ. P. 23(a)(1)-(4) and (b)(1), (b)(2) and/or (b)(3) on her own behalf and on behalf of the following class.

19. The **Improper Offset Class** is:

*All persons who are covered under any ERISA-governed health benefit plan insured and/or administered by Blue Cross against whom Blue Cross offset covered charges based on the following language found in the Blue Cross plan and/or certificate of coverage and/or summary plan description: "Payments made in error or overpayments may be recovered by the Claims Administrator as provided by law."*

20. The class period for L.P.'s and the class claims brought under 29 U.S.C. § 1132(a)(1)(B) extend back two years from the date of the commencement of this action; the class period for L.P.'s and the class claims brought under 29 U.S.C. § 1132(a)(3) extends back six years from the date of the commencement of this action.

21. Membership in the proposed class is so numerous that individual joinder of all class members is impracticable except by means of a class action. The disposition of the claims in a class action will benefit both the parties and the Court.

22. Plaintiff's claims are typical of all other class members. As to the **Improper Offset Class**, Plaintiff, like all other class members, had covered benefits reduced by amounts that Blue Cross claims it overpaid for other charges.

23. Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the class and Plaintiff is a member of the class.

24. Plaintiff will adequately represent the class because she has interests in common with the proposed class members and Plaintiff has retained attorneys who are experienced in class action litigation.

25. Common questions of law and/or fact predominate over any questions affecting only individual members of the class.  Common questions include, but are not limited to, the following:

- whether defendant's standardized language permits offsetting to recover purported overpayments; and

- whether defendant breached ERISA's statutory-required notice obligations when it offset covered benefits by amounts it claim it overpaid for other medical charges?

26. The prosecution of separate actions by individual members of each of the class members would create a risk of:

- inconsistent or varying adjudications concerning individual members of the class that would establish incompatible standards of conduct for defendant; and

- adjudication with respect to individual members of the class that would, as a practical matter, be dispositive of the interests of other members not party to such adjudications, and/or substantially impair or impede the ability of other non-party class members to protect such individual interests.

27. The class action method is appropriate for the fair and efficient prosecution of this action.

28. Individual litigation of all claims that might be asserted by all members of the class would produce such a multiplicity of cases that the judicial system, having jurisdiction of the claims, would remain congested for years. Class treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of the conduct of these related defendant.

29. The certification of the above class would allow litigation of claims that, in view of the expense of the litigation, may be an insufficient amount to support separate actions.

## LEGAL CLAIMS

### Count 1 – Plan Enforcement under 29 U.S.C. § 1132(a)(1)(B) Brought by the Improper Offset Class

30. L.P., on her own behalf and on behalf of the proposed **Improper Offset Class**, restates paragraphs 1-29 as if fully set forth.

31. L.P.'s first legal claim is brought under 29 U.S.C. § 1132(a)(1)(B). It is brought on her own behalf and on behalf of the **Improper Offset Class**.

32. Blue Cross must pay benefits to Plaintiff, or to their providers, according to the terms of their ERISA plans.

33. There is no provision in Blue Cross's plan that expressly allows Blue Cross to offset any amount of allegedly overpaid or mistakenly paid benefits from future benefits.

34. Despite the absence of a provision expressly allowing benefit offsets, Blue Cross has determined that some portion of benefits owed should be offset or retained by Blue Cross to compensate for benefits that Blue Cross claims to have overpaid.

35. On multiple occasions, Blue Cross has retained benefits indisputably owed to Plaintiff on the grounds that Blue Cross has determined that it overpaid benefits to Plaintiff.

36. Blue Cross's determination to offset or retain benefits is an "adverse benefit determination" under ERISA.

37. Blue Cross made its determination to offset or retain benefits by deducting amounts from benefits Blue Cross owes to Plaintiff and/or family members without providing detailed information required by ERISA for adverse benefit determinations.

38. Blue Cross did not provide the specific reason or reasons for the adverse determination (or any rationale for the adverse benefit determination), nor did it cite to the specific plan provision on which its determination was based.

39. By failing to comply with ERISA's requirements for adverse benefit determinations, Blue Cross violated its legal obligations under ERISA each time it offset benefits because it withheld benefits to which Plaintiff was entitled without complying with ERISA's requirements for adverse benefit determinations.

40. Plaintiff, on her own behalf and on behalf of the **Improper Offset Class**, thus seeks unpaid benefits in the amount withheld or offset by Blue Cross, interest back to the date their claims were originally submitted to Blue Cross.

41. Plaintiff further requests attorneys' fees, costs, prejudgment interest and other appropriate relief against Blue Cross.

## Count 2 – Failure To Provide Full And Fair Review
### As Required By ERISA Brought Under   29 U.S.C. § 1132(a)(3)
### Brought by the Improper Offset Class

42. L.P., on her own behalf and on behalf of the proposed **Improper Offset Class**, restates paragraphs 1-29 as if fully set forth.

43. Plaintiff's second claim is for breach of fiduciary duty for violations of ERISA's required review process. It is brought on her own behalf and on behalf of the proposed **Improper Offset Class**.

44. Although Blue Cross was obligated to do so, it failed to provide a "full and fair review" of denied claims pursuant to 29 U.S.C. § 1133 and related regulations.

45. Blue Cross's decision to offset or retain benefits owed to Plaintiff is unauthorized by the terms of the Plan, as is Blue Cross's failure to disclose its methodology for creating the offset and other critical information relating to such claims denials.

46. By engaging in this conduct, including using improper, invalid and undisclosed policies relating to the specified health care services, making baseless efforts to recoup overpayments without notifying Plaintiff, withholding payments for properly submitted claims to apply toward the demanded amount, and for effecting other systematic benefit reductions without disclosure or authority under the plans, Blue Cross failed to comply with ERISA.

47. As a result, Blue Cross failed to provide a "full and fair review," failed to provide reasonable claims procedures, and failed to make necessary disclosures to plan participants.

48. Any appeal of the Plaintiff's claim should be deemed exhausted or excused by virtue of Blue Cross's numerous procedural and substantive violations.

49. Blue Cross's decision to continue its policy of offsetting alleged overpayments even after Plaintiff objected demonstrates the futility of exhausting appeals to Blue Cross. Exhaustion of internal appeals under ERISA should, therefore, be deemed to be futile.

50. Plaintiff and the members of the **Improper Offset Class** have been harmed by Blue Cross's failure to provide a "full and fair review" of appeals under 29 U.S.C. § 1133, and by their failure to disclose relevant information in violation of ERISA.

51. Plaintiff and all the members of the **Improper Offset Class** are also entitled to injunctive and declaratory relief to remedy BCBS' continuing violation of these provisions.

**WHEREFORE,** Plaintiff requests the following:

- Certification of the classes described above with the appointment of Plaintiff as the class representative for the classes and the undersigned attorneys as class counsel;

- An order enjoining defendant from offsetting any **Improper Offset Class** members' claims in the absence of language expressly authorizing such offset;

- An order requiring defendant to fully adhere to ERISA's "full and fair" review appeals process, including requiring it to provide a complete disclosure explaining the basis of any offset in the future;

- An order requiring defendant to return to all **Improper Offset Class** members all amounts improperly offset during the class period, with interest;

- Any and all other relief related to this action, including payment of reasonable fees, costs, and interest where permitted by law.

DATED: December 26, 2018.

By: *s/David W. Asp*
Charles N. Nauen (MN Bar No. 121216)
Susan Ellingstad (MN Bar No. 243346)
David W. Asp (MN Bar No. 344850)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 339-0981
cnnauen@locklaw.com
seellingstad@locklaw.com
dwasp@locklaw.com

Jordan Lewis (MN Bar No. 203099)
**JORDAN LEWIS, P.A**.
4473 N.E. 11th Avenue
Fort Lauderdale, FL 33334
Tel: (954) 616-8995
Fax: (954) 206-0374
jordan@jml-lawfirm.com

*Attorneys for Plaintiff*
