UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

J.P. and M.K.,                                    NO. 18-cv-3472 (MJD/DTS)
*individually and on behalf of*
*all others similarly situated*,

      Plaintiffs,

v.

                            **REPORT AND RECOMMENDATION**

BCBSM, Inc.,
*d/b/a* Blue Cross and Blue Shield
of Minnesota,

      Defendant.

---

David Asp and Jennifer Jacobs, Lockridge Grindal Nauen PLLP, 100 Washington Avenue South, Suite 2200, Minneapolis, Minnesota 55401, for Plaintiffs.

Joel Allan Mintzer, Blue Cross and Blue Shield of Minnesota, P.O. Box 64560, St. Paul, Minnesota 55164, and David M. Wilk, Larson King, LLP, 30 East Seventh Street, Suite 2800, St. Paul, Minnesota 55101, for Defendant.

---

## INTRODUCTION

In this putative class action brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), Plaintiffs J.P. and M.K. allege their health insurance plan administrator, BCBSM, Inc., violated the Plan's terms by reducing their approved benefits to claw back a purported overpayment. The existence and extent of that overpayment, which was for out-of-network services Plaintiffs' daughter received, is the subject of a separate lawsuit. Plaintiffs further allege BCBSM violated its fiduciary duties under ERISA to provide a full and fair review of its adverse decision.

BCBSM asks the Court to dismiss Plaintiffs' lawsuit, asserting Plaintiffs (1) failed to exhaust the Plan's administrative process before bringing this action, (2) have impermissibly split their claims between the two lawsuits, and (3) have failed to state a claim because the Plan's language authorizes the conduct alleged in the Complaint. Each of BCBSM's arguments fails, and so the Court recommends the motion be denied.

### FINDINGS OF FACT[1]

At all relevant times, J.P. participated in his employer's ERISA-governed health insurance plan. Am. Compl. ¶ 5, Dkt. No. 19. Although J.P.'s employer sponsors the plan, BCBSM administers it. *Id.* at ¶¶ 5, 8. J.P.'s wife, M.K., and their daughter, L.P., are also covered under the Plan. *Id.* at ¶ 9.

In June 2016, J.P. and M.K. sent L.P., then a minor, to Change Academy at Lake of the Ozarks, Inc., a state-licensed residential treatment center in Missouri. *Id.* at ¶¶ 9-10. J.P. paid out of pocket for all the services L.P. received during her approximately 16-month stay at Change Academy. *Id.* at ¶¶ 10-11. J.P. sought coverage for these expenses under his Plan, and BCBSM initially reimbursed J.P. a total of $83,554.55. *Id.* at ¶¶ 11-12. However, BCBSM subsequently concluded the payments were in error and demanded J.P. refund the entire sum. *Id.* at ¶ 12.

In May 2018, L.P., by and through J.P., filed a lawsuit challenging BCBSM's denial of benefits, alleging it violated ERISA and the federal Mental Health Parity and Addiction Equity Act. *Id.* at ¶ 14. In response, BCBSM asserted a counterclaim against J.P., seeking

---

[1] On a motion to dismiss under Rule 12(b)(6), the Court accepts all of Plaintiffs' factual allegations in their Amended Complaint as true. *E.g.*, *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 740 (8th Cir. 2002).

a declaration that it "is entitled to receive from J.P., on behalf of the Plan, the amounts of overpayments made to J.P." *Id.* at ¶ 15.

Starting in November 2018, BCBSM began to offset benefits it otherwise approved for J.P. and his dependents. J.P. first received an explanation of benefits packet for therapy L.P. received after she left Change Academy. *Id.* at ¶ 16, Ex. B. BCBSM approved $550.00 of benefits but listed $440.00 of that as an "offset amount," stating, "Payment has been reduced and applied to the refund requested from you by us. You have satisfied $440.00 of the $5550.00 amount owed." *Id.* J.P. subsequently received a similar EOB for services M.K. received. Again, BCBSM approved $220 of benefits, but offset $176.00. *Id.* at ¶ 18, Ex. C. The EOB also contained a similar explanation: "Payment has been reduced and applied to the refund requested from you by us. You have satisfied $176.00 of the $5110.00 amount owed." *Id.* Shortly thereafter, J.P. received an EOB for services he himself received, offsetting $1,232.00 of the $1,540.00 approved benefits and including the same summary explanation. *Id.* at ¶ 19, Ex. D.

Plaintiffs allege they are unaware of any disputed claims other than those for L.P.'s time at Change Academy. *Id.* at ¶ 20. They believe BCBSM relies on language in their Plan's Summary Plan Description, which provides that "Payments made in error or overpayments may be recovered by the Claims Administrator as provided by law." *Id.* at ¶ 21. Based upon these facts, J.P. and M.K. assert against BCBSM a claim for: (1) plan enforcement under 29 U.S.C. § 1132(a)(1)(B) and (2) a violation of ERISA under § 1132(a)(3) for failure to provide a reasonable opportunity for full and fair review.[2]

---

[2] Plaintiffs' Amended Complaint also alleges facts regarding the putative class which are irrelevant to the motion before the Court.

**CONCLUSIONS OF LAW**

BCBSM seeks to dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and offers three arguments for dismissal. It first raises two affirmative defenses, contending Plaintiffs both failed to exhaust their administrative appeals process and have impermissibly split their claims between two lawsuits. Alternatively, BCBSM argues Plaintiffs fail to state a claim because, accepting all factual allegations in the Amended Complaint as true, the Plan allows BCBSM to offset benefits as it allegedly has done here. Not one of these arguments supports dismissal of the action at the pleading stage.

## I.    Standard of Review

### A.    Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the facial plausibility of a complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). A court considering dismissal under 12(b)(6) examines whether a complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Although a court must accept all factual content in a complaint as true, it may ignore "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Id.*

**B.    Records to be considered**

Although a motion to dismiss ostensibly challenges the sufficiency of the pleading, this Court may "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; without converting the motion into one for summary judgment." *Dittmer Props., L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir. 2013) (quoting *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)) (internal quotation marks omitted). Here, BCBSM asks the Court to look beyond the Amended Complaint and consider both a paragraph in the original complaint filed in this case and several exhibits attached to the declaration of its counsel, Mr. Mintzer.

The Court will disregard the factual allegation BCBSM cites to from the original complaint. By filing their Amended Complaint, Plaintiffs "render[ed] the original complaint without legal effect." *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000). BCBSM does not challenge this established principle or otherwise offer an applicable exception to it. Nor does it appear to the Court that Plaintiffs' Amended Complaint directly contradicts any allegations or admissions made in the original complaint. Instead, BCBSM directs the Court to a portion of the Amended Complaint it contends establishes the same fact as in the original complaint. Blue Cross's Reply Mem. 4, Dkt. No. 32. Although the Court shall decide what inferences may properly be drawn from the Amended Complaint, it takes BCBSM's response as waiving any argument on this issue and shall disregard the citation to the original complaint.

As to Mr. Mintzer's declaration, the Court concludes it may consider two of the three exhibits attached thereto without converting BCBSM's motion into one for summary judgment. The first exhibit, identified as Exhibit A, is a copy of the 2018 Summary Plan Description. Decl. of Joel A. Mintzer ¶ 3, Ex. A. In ERISA cases, the SPD is necessarily embraced by the operative complaint as it contains the relevant terms. *Morrison v. MoneyGram Int'l, Inc.*, 607 F. Supp. 2d 1033, 1045 (D. Minn. 2009). Although the Plaintiffs attached a copy of the 2016 SPD to their Amended Complaint, the benefits claims at issue are from 2018, *e.g.*, Am. Compl. Ex. B, Ex. C, Ex. D, and are presumably governed by the 2018 SPD. Regardless, a cursory review of both SPDs shows the material terms at issue to be identical. The Court may consider Exhibit A to Mr. Mintzer's declaration on a motion to dismiss.

Similarly, Exhibit C to Mr. Mintzer's declaration is a redacted copy of the complete EOB BCBSM sent J.P. on December 19, 2018. Mintzer Decl. ¶ 5, Ex. C. Plaintiffs do not challenge the authenticity of this document, just as BCBSM does not challenge the authenticity of the partial version Plaintiffs attached to their Amended Complaint. The "complete" EOB appears only to add four pages of boilerplate notices, pages Plaintiffs included in the other EOBs attached to the Amended Complaint. *Compare id.*, *with* Am. Compl. Ex. C, Ex. D. Still, because Plaintiffs attached a part of the EOB to the operative complaint, they opened the door. If part of the EOB is attached to the Amended Complaint, then that complaint must necessarily embrace the entire document, which may be considered on a motion to dismiss, for whatever it is worth.

However, the Court will disregard Exhibit B to Mr. Mintzer's declaration, which includes redacted copies of checks BCBSM sent to J.P. and the subsequent letters

informing him BCBSM now considered those payments made in error. Mintzer Decl. ¶ 4, Ex. B. Although Plaintiffs allege that BCBSM approved $83,554.55 in benefits and then reversed course, this lawsuit is not concerned with the propriety of that determination. How BCBSM initially paid the benefits it subsequently determined to be erroneous and any communication after the revised EOBs were sent are simply not integral to the claim. Nor does a mere reference to such payments and communications make them "necessarily embraced" by the complaint in the way, say, the SPD would be even if Plaintiffs had not attached the SPD to their Amended Complaint.

## II. Exhaustion

BCBSM first argues dismissal is appropriate as Plaintiffs, despite adequate notice, failed to exhaust the administrative appeals process as required by the Plan. Plaintiffs retort that, assuming this is even a matter for consideration on a Rule 12(b)(6) motion, they properly pleaded that the claims may be deemed exhausted both because BCBSM failed to comply with the applicable regulations regarding notice and, alternatively, any administrative appeal would be futile. Plaintiffs have sufficiently shown BCBSM's failure to give adequate notice and so have sufficiently alleged that their claims are exhausted.

### A. Exhaustion on a motion to dismiss

Plaintiffs attempt to cut off any exhaustion analysis before it begins, arguing that administrative exhaustion is generally an affirmative defense and so best considered at the summary judgment stage, rather than as a pleading requirement. As a general rule, Plaintiffs may well be correct. *E.g.*, *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (discussing affirmative defenses generally). In the present matter, the waters are murkier.

Although ERISA does not explicitly require exhaustion of any administrative review process, federal courts, including the Eighth Circuit, "have uniformly concluded that benefit claimants *must* exhaust the review procedures mandated by 29 U.S.C. § 1133(2) before bringing claims for wrongful denial to court." *Kinkead v. Sw. Bell Corp. Sickness & Accident Disability Benefit Plan*, 111 F.3d 67, 68 (8th Cir. 1997). The Eighth Circuit has not hesitated to reach the exhaustion issue on a motion to dismiss, stating its "case law is clear that [a plaintiff's] claim can proceed only if he has pled sufficient facts to show" exhaustion or an exception to the exhaustion requirement. *Angevine v. Anheuser-Busch Companies Pension Plan*, 646 F.3d 1034, 1038 (8th Cir. 2011); *see also Kinkead*, 111 F.3d at 68 (affirming district court order granting defendants' motion to dismiss); *Van Natta v. Sara Lee Corp.*, 439 F. Supp. 2d 911, 940 (N.D. Iowa 2006) (concluding that plaintiffs "are still required to aver [exhaustion of internal claims procedures] in their complaint in order to survive a motion to dismiss"). So, although Plaintiffs bear no burden of production on a motion to dismiss, this Court must still consider whether the Amended Complaint—and any documents embraced by it—shows either exhaustion or an exception thereto.

**B.     "Deemed" exhausted**

Because BCBSM failed to follow certain regulations regarding adverse benefits decisions, Plaintiffs' claims may be deemed exhausted. Under authority granted by ERISA, the Department of Labor has promulgated regulations governing claims procedures. *See generally* 29 C.F.R. § 2560.503-1. Part of those regulations govern the

content of a notification regarding an adverse benefit determination.[3] They require, in relevant part, that:

> The notification shall set forth, in a manner calculated to be understood by the claimant—
> (i)    The specific reason or reasons for the adverse determination;
> (ii)   Reference to the specific plan provisions on which the determination is based;
> (iii)  A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
> (iv)  A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review.

*Id.* at § 2560.503-1(g)(1)(i)-(iv). If a Plan fails to establish or follow procedures consistent with these regulations, "a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act . . . ." *Id.* at § 2560.503-1(l)(1).

BCBSM failed to notify Plaintiffs of either the specific reason for the adverse determination or of the specific plan provisions on which the determination was based. Each EOB Plaintiffs received provided a brief overview to the Plan's administrative review process, satisfying one of the regulatory requirements. However, the EOBs otherwise only stated the amount being offset and that the approved benefits were "reduced and applied to the refund requested from you by us." Am. Compl. Ex. B, Ex. C, Ex. D. Although Plaintiffs associated the offset with the only disputed claims of which they were aware, the "explanation" is slim at best and does not provide a "specific reason."

---

[3] The EOB plainly constitutes an adverse benefit determination, as it was a reduction of an approved benefit. *E.g.*, Am. Compl. Ex. B, at 9.

Even assuming the EOBs provided enough specificity regarding the reason for the offset, they fail to comply with the applicable requirements in other ways. Nowhere in the EOBs does BCSBM cite the specific plan provision on which it asserts its authority to offset. This plainly violates the regulation's requirement that the notice provide "[r]eference to the *specific* plan provisions on which the determination is based." 29 C.F.R. § 2560.503-1(g)(1)(ii) (emphasis supplied). BCBSM cannot satisfy this regulatory requirement with boilerplate language pointing a claimant to the entire SPD. *See Berkoben v. Aetna Life Ins. Co.*, 8 F. Supp. 3d 689, 712 (W.D. Penn. 2014) ("The fact of the matter is ERISA and DOL regs require the administrator to inform the claimant of what information is needed to perfect his claim, and boilerplate language that has no application to the particular disability claim does not satisfy this requirement."). Similarly, the EOBs are devoid of any information that would allow Plaintiffs to understand how the offset was calculated for each benefits claim, which Plaintiffs would need to know to perfect their administrative claim. 29 C.F.R. § 2560.503-1(g)(1)(iii). The EOBs generically informed the Plaintiff that BCBSM "may use internal and external rules and guidelines" and that they "have the right to ask for any relevant documents, records, or other information used to process [their] claim." Mintzer Decl. Ex. C. Although the EOBs alerted Plaintiffs that BCBSM may have additional information relevant to an administrative appeal, they did not describe that information or its import, as also required by the regulations. *Berkoben*, 8 F. Supp. 3d at 712.

BCBSM contends the EOBs comply with the regulations because, besides providing notice of the right to an administrative appeal, they direct Plaintiffs both to a website with plan and claims information and to a customer service phone line. Assuming

*arguendo* that Plaintiffs could have gotten from those sources the required information the EOBs lacked, is not clear that this satisfies the regulatory notice requirements. More importantly, the Court does not know whether those sources could have provided the required information. On the record available to the Court on this Rule 12(b)(6) motion—the Amended Complaint, as well as the documents attached to it and embraced by it—Plaintiffs have sufficiently pleaded that they should be deemed to have exhausted their administrative review process. Am. Compl. ¶¶ 41-45.

The primary case on which BCBSM relies, *Kinkead*, is distinguishable from the present circumstances. There, the Eighth Circuit considered whether a disability benefits claim denial letter complied with the notice requirements of the regulations. *Kinkead*, 111 F.3d 67, 68-69. In rejecting the appellant's argument that the denial letter failed to sufficiently detail the reasons for denying her benefits claim as required by prior precedent, the Eighth Circuit distinguished the level of detail ERISA itself requires for a final claim denial letter, as opposed to an initial letter. *Id.* at 69. The Eighth Circuit concluded that the letter at issue satisfied the regulatory requirements. But the denial letter it considered was far more fulsome than the EOBs at issue here: "The Committee's letter notified Kinkead that it had examined her file, 'including a medical report from your doctor and the opinion of our Medical Advisor,' and was denying her claim 'because medical evidence does not substantiate you were disabled.'" *Id.* The letter also specifically stated that the Committee "relied upon the provisions of Article 4, Paragraph 4.1 of the Plan[,]" which it also quoted. *Id.* The letter thus gave Kinkead enough information to understand exactly what she would need to challenge on an administrative appeal. The

same is simply not true here, where the EOBs neither cited any provision of the Plan nor any materials relied upon in calculating the offset.

### C.    Futility

Plaintiffs also argue they have also sufficiently pleaded that any attempt to exhaust the administrative appeals process would have been futile because BCBSM continued to offset in the face of their objection. *See* Am. Compl. ¶¶ 46, 53. The Court disagrees. Although futility is an exception to the exhaustion requirement, it is a narrow one and requires Plaintiffs to "show that it is certain that [their] claim will be denied on appeal, not merely that [they doubt] that an appeal will result in a different decision." *Angevine*, 646 F.3d at 1038 (quoting *Brown v. J.B. Hunt Transp. Serv., Inc.* 586 F.3d 1079, 1085 (8th Cir. 2009)). Here, Plaintiffs only pleaded that they "objected" to the offsetting and that BCBSM continued to offset. Simply put, BCBSM not reversing course after an informal objection does not plead sufficient facts to plausibly demonstrate that a formal appeal would have been futile.

Similarly, BCBSM's assertion of what it considers a "compulsory counterclaim"[4] in *L.P.* does not demonstrate futility. "If a litigation position is enough to show futility . . . then the futility exception would swallow the exhaustion doctrine." *Chorosevic v. MetLife Choices*, 600 F.3d 934, 946 (8th Cir. 2010). Although the *Chorosevic* court was concerned with an answer, rather than an affirmative claim for relief, Plaintiffs do not explain why any material differences would upend the *Chorosevic* court's logic. Both

---

[4] The Court will not unnecessarily prolong the analysis by considering whether such a claim was compulsory or merely permissive, or whether BCBSM's claim against J.P. in a suit where L.P. is the only named plaintiff is a "counterclaim" at all.

pleadings are, ultimately, a litigation position regarding the correctness of the plan fiduciary's decision.

## III.    Claim-Splitting

BCBSM next argues that Plaintiffs' present lawsuit is an impermissible splitting of their claims from L.P.'s lawsuit. The judicially created prohibition against splitting claims shares the same rationale as claim preclusion and is "premised on the notion that the same parties are addressing the same controversy in more than one lawsuit." *George v. Uponor Corp.*, 988 F. Supp. 2d 1056, 1077 (D. Minn. 2013). When a court identifies claim-splitting, dismissal or a stay of the duplicative lawsuit serve to "promote judicial efficiency and avoid conflicting rulings." *Id.* at 1078.

"To determine whether a suit is duplicative, we borrow from the test for claim preclusion." *Adams v. Calif. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007); *see also MacIntyre v. Lender Processing Servs., Inc.*, 2012 WL 4872678, at *2 (D. Minn. Oct. 15, 2012) (noting that, although "res judicata depends on a final judgment in one action, . . . the principles of res judicat[a] illuminate the claim-splitting determination."). So, a second suit is duplicative if "the same cause of action and the same parties or their privies were involved in both cases." *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990). A cause of action (or claim) is barred by these principles "if it arises out of the same nucleus of operative facts as the prior claim." *Id.*

Advancing a 30,000 foot view of the facts, BCBSM contends the present lawsuit must be claim-splitting because it is the same family litigating against BCBSM under the same policy and involving the same "pot of money." To BCBSM, the different claims are just different legal theories supporting recovery for the same cause of action. And different

legal theories for the same cause of action cannot support two separate lawsuits. *Poe v. John Deere Co.*, 695 F.3d 1103, 1105 (8th Cir. 1982).

BCBSM takes too broad a view of the case for claim-splitting purposes, and so its argument must fail. One way of determining whether a plaintiff has presented two separate claims is to determine "whether or not proof of the same facts will support both actions, or . . . whether the wrong for which redress is sought is the same in both actions." *Id.* at 1106; *see also* Restatement (2d) of Judgements § 24(2) cmt. b (1982) ("Though no single factor is determinative, the relevance of trial convenience makes it appropriate to ask how far the witnesses or proofs in the second action would tend to overlap the witnesses or proofs relevant to the first."). Viewing the facts through this lens, J.P. and M.K. have brought a different claim than that at issue in *L.P.* In the first lawsuit, L.P. challenges the denial of coverage for her time spent at a residential treatment center, which she argues stems from BCBSM's violation of a federal law mandating parity for mental health coverage. *See generally* Compl., *L.P. v. BCBSM, Inc.*, Case No. 18-cv-1241 (MJD/DTS). To succeed, she must show that the Plan places some additional restriction on coverage for a mental health benefit than it does on an analogous medical/surgical benefit. *Id.* If she succeeds and her claims are reprocessed, any purported overpayment may disappear, and she may be entitled to benefits that she never previously received.

By contrast, her parents' present lawsuit challenges only the propriety of BCBSM's subsequent practice of offsetting their benefits to recover the purported overpayment; it does not challenge either BCBSM's determination that it erroneously paid L.P. benefits to which she was not entitled or the benefits claims it determined initially to be not covered

14

under the Plan.[5] To succeed here, J.P. and M.K. must show that they were subject to having their otherwise-approved benefits offset and that BCBSM violated the Plan and its fiduciary duties by offsetting. This relates to actions BCBSM took after it determined L.P. was not entitled to coverage for her stay at a residential treatment center and has nothing to do with the benefits determination itself. There is little factual overlap between the claims, other than that the first precipitated the second. More precisely, the two claims arise from two distinct *acts* BCBSM took, even if the overpayment is related to the prior lawsuit. Although some overlap exists between the two lawsuits, they do not rely upon the same nucleus of operative facts.[6] For this reason, it also does not matter to the claim-splitting analysis whether or not Plaintiffs knew about the offsetting prior to filing their Amended Complaint in this action. *Cf. Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000).

BCBSM cites *Daley v. Marriott Int'l, Inc.*, 415 F.3d 89 (8th Cir. 2005) as guidance for applying claim-splitting to ERISA actions. *Daley* does not help BCBSM. There, the plaintiff filed an initial lawsuit alleging breach of fiduciary duty for failure to comply with a state mental health parity law. *Id.* at 892. After repeated attempts to amend her complaint were denied, the plaintiff filed a second lawsuit naming her employer rather than the plan

---

[5] This distinction is important for another reason. In its recent R&R in *L.P.*, this Court concluded that BCBSM's declaratory judgment "counterclaim" regarding its prospective rights to recoup any overpayment was unripe because the existence of any such overpayment was too uncertain. That analysis is irrelevant to the present action because J.P. and M.K. challenge separate conduct that has already occurred, with BCBSM assuming the validity of the overpayment.

[6] Because the Court concludes that the claims do not rest upon a common nucleus of operative facts, it need not reach the closer call of whether L.P., as plaintiff in the first action, is in privity with her parents for purposes of the second lawsuit.

administrator as the defendant and alleging additional claim denials that occurred since she first filed suit. *Id.* at 892-93. The Eighth Circuit had no problem concluding that the new lawsuit addressed the same conduct as in the first lawsuit, even if new instances had subsequently occurred. *Id.* at 896. As the court put it, "[r]egardless of the number of claim denials and whether Daley received timely notice of those denials, the wrong for which she seeks redress—the denial of her claims based on the plan-year limit—is the same in both *Daley I* and *Daley II.*" *Id.* There, both lawsuits alleged the same wrongful act—denial of benefits claims all based upon the same rational. Here, as explained above, J.P. and M.K. allege a very different kind of wrongful act in their present lawsuit than L.P. alleges in hers. *Daley* does not guide this Court to the conclusion BCBSM seeks.

BCBSM also suggests Plaintiffs could raise any argument they would make in the present case in response to BCBSM's counterclaim in L.P.'s lawsuit. Perhaps they can, and even should, do so. But that does not resolve whether Plaintiffs are claim-splitting. The only case BCBSM cites for its theory is inapposite, instead addressing the "first to file" rule in cases of concurrent jurisdiction. *See N.W. Airlines v. Am. Airlines*, 989 F.2d 1002, 1004-05 (8th Cir. 1993). Although inapposite, the case relates to a final point. Even if Plaintiffs had split their claims in the present case, dismissal would not be warranted. The concerns that motivate the judge-made bar against claim-splitting are judicial efficiency and consistent rulings. *George*, 988 F. Supp. 2d at 1077-78. Those concerns are simply not present here, where both lawsuits are in the same judicial district, being simultaneously heard and considered by the same judicial officers. BCBSM's claim-splitting argument fails.

## IV.   The "Merits"

Finally, BCBSM argues dismissal is warranted because the Plan's language, read in conjunction with caselaw, allows BCBSM to offset overpayments of L.P.'s benefits against future payments of her parents' benefits. That langue provides, in its entirety, that "[p]ayments made in error or overpayments may be recovered by the Claims Administrator as provided by law." Am. Compl. Ex. A, at 7. Although BCBSM may ultimately be correct that it is authorized to take the actions it has, this Court cannot reach that conclusion on the present motion.

Resolution of BCBSM's argument requires interpretation of a Plan provision that it apparently reads to authorize the offsetting among beneficiaries whose benefits all depend from the same Plan participant. The Plan itself grants BCBSM discretionary authority to interpret the provisions of the Plan. Am. Compl. Ex. A, at 81; Mintzer Decl. Ex. A, at 46. As such, this Court must defer to the administrator's interpretation if that interpretation is reasonable. *Donaldson v. Nat'l Union Fire Ins. Co.*, 863 F.3d 1036, 1039 (8th Cir. 2017). In determining whether BCBSM's interpretation is reasonable, the Court is guided by the following "non-exhaustive" factors:

> whether their interpretation is consistent with the goals of the Plan, whether their interpretation renders any language in the Plan meaningless or internally inconsistent, whether their interpretation conflicts with the substantive or procedural requirements of the ERISA statute, whether they have interpreted the words at issue consistently, and whether their interpretation is contrary to the clear language of the Plan.

*Peterson on behalf of E v. UnitedHealth Grp. Inc.*, 913 F.3d 769, 775 (8th Cir.), *cert. dismissed sub nom. UnitedHealth Grp. Inc. v. Peterson*, 140 S. Ct. 339 (2019) (quoting *Finley v. Special Agents Mut. Ben. Ass'n, Inc.*, 957 F.2d 617, 621 (8th Cir. 1992)); *see*

*also Spizman v. BCBSM, Inc.*, 2015 WL 4569249, at *6 (D. Minn. July 27, 2015) (applying *Finley* factors on a motion to dismiss).

On a motion to dismiss, where the only record to be considered is the Amended Complaint and the documents it embraces, this Court cannot say Plaintiffs fail to plausibly allege that BCBSM violated the terms of the Plan. Neither party fully framed BCBSM's final argument as one turning on the reasonableness of BCBSM's interpretation of the Plan's language, which it plainly does, and so did not explore the *Finley* factors. Instead, the parties jumped headfirst into whether Eighth Circuit caselaw "provides" that BCBSM may offset in the manner it has done. Yet, every case the parties cite is distinguishable from the present facts because they do not address squarely the issue this case raises: does the Plan authorize offsetting benefits owed to one beneficiary to recover an overpayment made to another beneficiary if both beneficiaries are entitled to benefits because they are dependents of the same plan participant?

BCBSM relies primarily on *Pilger v. Sweeney*, in which the Eighth Circuit held that a plan booklet's "broad language[7] granting [d]efendants discretion to take remedial action" entitled the defendants "to both correct and recoup the overpayments" of retirement benefits made to the plaintiffs. 725 F.3d 922, 926 (8th Cir. 2013). However, *Pilger* involved a retirement fund that, over the course of seven years, overpaid retirement benefits to the individual plaintiffs. *Id.* at 925. When the defendants realized the error, they adjusted the benefits and began withholding 25% of each plaintiff's monthly benefit check.

---

[7] "The Trustees shall have the right to recover any amount paid to such Participant or Pensioner or other claimant to which he was not rightfully entitled under the provisions of this Plan." Br. of Pls.-Appellants at *18, *Pilger v. Sweeney*, 2012 WL 4783771 (8th Cir. Sept. 28, 2012).

*Id.* Although the broad plan language in *Pilger*, as here, did not expressly authorize withholding from future benefits payments, a key distinction means *Pilger* cannot dispose of the present case.  As a court in this District recently observed, "*Pilger* involved not only the same plan, but the same plan *beneficiaries.* There is nothing unusual or surprising about a plan having authority to recoup overpaid benefits from the very *beneficiary* who received the overpayments . . . ." *Peterson on behalf of Patients E, I, K, L, N, P, Q, and R v. UnitedHealth Grp., Inc.*, 242 F. Supp. 3d 834, 846 (D. Minn. 2017) (emphasis supplied). Although L.P. and M.K. are both beneficiaries of a health care plan by virtue of J.P.'s status as a participant, it does not follow as a legal certainty that the reasoning of *Pilger* can be so readily extended to the present matter. *Id.* at 847.

By the same token, Plaintiffs rely upon the recent Eighth Circuit opinion in *Peterson v. UnitedHealth Group, Inc.*, 913 F.3d 769 (8th Cir. 2019). There, the Eighth Circuit concluded that broad language authorizing recovery did not grant the plan administrator authority to engage in cross-plan offsetting, as such a conclusion "would be akin to adopting a rule that anything not forbidden by the plan is permissible." *Id.* at 776. But again, that case is distinguishable because it involved cross-plan offsetting, in which the plan administrator offset against payments it would have otherwise paid to certain medical providers whom it had previously overpaid for services the providers rendered to entirely different participants of entirely different plans. *Id.* The Eighth Circuit reasoned that UnitedHealth was, at best, toeing the line of its fiduciary duties and so the cross-plan offsetting only be reasonable if explicitly allowed by each of the plans involved. *Id.* Here, the concerns are not as heightened, as the matter involves several beneficiaries, but only one plan and one plan participant.

Because the law is not sufficiently clear, the parties' arguments necessarily collapse back to whether BCBSM's interpretation is reasonable under the circumstances. But this Court cannot answer at least two of the *Finley* factors on the present record. First, it remains unclear whether BCBSM's actions, which reduce the benefits owed to one beneficiary to recover an overpayment to a separate beneficiary, are consistent with the purpose of the Plan and BCBSM's duties to each beneficiary. Second and relatedly, the Court cannot, on the present record, tell whether BCBSM has consistently interpreted the Plan to authorize it to offset benefits against any individual beneficiary for an overpayment made to another beneficiary who is insured by virtue of their relationship to the same plan participant. Accordingly, dismissal at the pleading stage is inappropriate and must wait for further factual development.

### RECOMMENDATION

For the reasons stated above, the Court RECOMMENDS THAT Defendant's Motion to Dismiss [Dkt. No. 20] be DENIED.

Dated: February 24, 2020

s/ David T. Schultz
DAVID T. SCHULTZ
United States Magistrate Judge

### NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being

served a copy" of the Report and Recommendation.   A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).