# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

J.P. and M.K., individually and on
behalf of all others similarly situated,

        Plaintiffs,

v.

        **MEMORANDUM OF LAW & ORDER**
        Civil File No. 18-3472 (MJD/DTS)

BCBSM, Inc. d/b/a Blue Cross and
Blue Shield of Minnesota,

        Defendant.

Charles N. Nauen, Susan E. Ellingstad, David W. Asp, and Jennifer L. M. Jacobs, Lockridge Grindal Nauen P.L.L.P., and Jordan Lewis, Jordan Lewis, P.A., Counsel for Plaintiffs.

Joel Allan Mintzer and Doreen A. Mohs, Blue Cross and Blue Shield of Minnesota, and David M. Wilk, Larson King, LLP, Counsel for Defendant.

## I.    INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Class Certification.

[Docket No. 74]  The Court heard oral argument by telephone on January 13,

2021.  The Court denies the motion because Plaintiffs cannot show commonality,

typicality, or adequacy sufficient to support certifying the proposed class.  The

question of whether Blue Cross was entitled to offset is answered by the plan

documents, and the putative class members belong to 84 different ERISA plans,

an unknown number of which have different controlling plan documents with

different plan language that will need to be analyzed to determine the outcome

of each class member's claims.  Additionally, there is a substantial question

whether Plaintiffs are members of the very class that they propose; there is a

substantial and fact-intensive question regarding whether Plaintiffs exhausted

their administrative remedies; and, due to the parallel L.P. Lawsuit, Plaintiffs'

interests and injuries diverge from those of the proposed class.

## II.    BACKGROUND

### A.    Factual Background

#### 1.    Parties

Bolton & Menk, Inc. self-insures an ERISA health benefit plan that it offers

to its employees and hired Defendant BCBSM, Inc. d/b/a Blue Cross and Blue

Shield of Minnesota ("Blue Cross") to administer the plan.  (Am. Compl. ¶¶ 5, 8.)

Plaintiff J.P. is an employee of Bolton & Menk, Inc. and is covered under the plan

as the subscriber or contract holder.  (Id. ¶ 5; Bazzarre Decl.  ¶ 4.)  J.P.'s wife,

M.K., and his daughter, L.P., are also covered under the plan as beneficiaries.

(Am. Compl. ¶¶ 6, 9; Bazzarre Decl. ¶ 4.)

### 2.   Plan Language

The plan's Summary Plan Description ("SPD") includes the following sentence, under the heading "Payments Made in Error:" "Payments made in error or overpayments may be recovered by the Claims Administrator as provided by law" ("Payments Made in Error Term").  (Mintzer Decl., Ex. 1, Bolton & Menk, Inc., 2018 Summary Plan Description at 47.)

Using its operating system, Blue Cross automates an offsetting process based on the Payments Made in Error Term.  Once Blue Cross determines that it has overpaid a claim, a Blue Cross claims examiner codes the claim as overpaid in the system and keys in data that completes an otherwise prepared letter.  The letter informs the participant that Blue Cross believes a claim has been overpaid. If the claim remains unpaid for 30 days, a follow-up letter is sent.  If it is not paid by 60 days, the case is eligible for offset.  When a subscriber has a new claim for which Blue Cross would issue a payment directly to the subscriber (rather than to a provider), the money will not be paid to the subscriber because, as an automatic feature of the software system, the amount is automatically applied to the collection case.  (Lewis Decl., Ex. 2, Dressen 30(b)(6) Dep. 23, 25-26.)

### 3.     Change Academy Treatment and Claims

In 2016 and 2017, J.P. enrolled his daughter at Change Academy at Lake of the Ozarks ("Change Academy") in Missouri.  (Am. Compl. ¶¶ 9–12.)  Change Academy is a non-participating ("non-par") provider, meaning that it does not have a contract with Blue Cross or any other licensee of the Blue Cross and Blue Shield Association.  (Mintzer Decl. ¶¶ 4–5; Mintzer Decl., Ex. 1, SPD at AR2751.)  J.P. personally paid $189,477.74 for the services rendered at Change Academy and then sought coverage and reimbursement from Blue Cross for those services.  (Am. Compl. ¶ 11.)  When a member obtains services from a non-par provider, Blue Cross typically does not send a check directly to the provider.  (Mintzer Decl., Ex. 1, at AR2711, AR2741.)  Instead, Blue Cross sends payment to the subscriber, that is, the employee (unless certain exceptions apply).  (Id. at AR2677, AR2737, AR2741; Bazzarre Decl. ¶¶ 4–5.)

Initially, Blue Cross determined that some of Change Academy's services were covered and approved $83,554.55 in payment to J.P.  (Am. Compl. ¶ 12.)  Because Change Academy is non-par, Blue Cross made the checks payable to J.P., and sent the checks to J.P.   (See, e.g., Mintzer Decl. Ex. 2, Administrative

Record[1] at AR0639, AR0651; Mintzer Decl., Exs. 5–6; see also Bazzarre Decl. ¶¶ 6–7.)  However, Blue Cross later concluded that Change Academy's services were not covered and that those payments had been improperly made.  (Am. Compl. ¶ 12; see also, e.g., AR0735–42; Mintzer Decl. Ex 8.)

Blue Cross sent letters to J.P. requesting repayment.  (See, e.g., Mintzer Decl. Ex. 7.)  When J.P. did not respond, Blue Cross sent reminder letters.  (See, e.g., AR0840–41.)  When J.P. still did not respond, Blue Cross's system noted that future claims would be subject to recoupment.  (AR3251–53; Mintzer Decl. Ex. 17, Dressen 30(b)(6) Dep. 10, 15, 19, 23–24.)

J.P. contested Blue Cross's failure to pay for Change Academy's services, as well as Blue Cross's decision to reprocess and deny the claims that it had previously paid.  (AR0878–83.)  After Blue Cross upheld its determination following an administrative appeal, J.P. sued Blue Cross on behalf of his daughter, L.P., in May 2018.  L.P. v. BCBSM, Inc., Civil File No. 18-1241 (D. Minn.) ("L.P. Lawsuit").  Blue Cross counterclaimed, seeking a declaration that it had the right to recover any overpayment.  ([L.P. Lawsuit Doc. 34] Def.'s Answer

---

[1] Citations to the administrative record, other than the plan documents, are within Mintzer Decl. Exhibit 2, and will be referred just by their "AR" Bates number.

to Am. Compl. and Countercl. at 12.)  That counterclaim relies on the same

Payments Made in Error Term at issue in this lawsuit.  (<u>Id.</u> 11, ¶ 8.)

### 4.   Timpone Treatment and Claims

In 2018, J.P., M.K., and L.P. each obtained behavioral health services from a

different non-par provider, Helene Timpone, LCSW.  (<u>See, e.g.</u>, AR3157–62.)

At J.P.'s request, Timpone provided him invoices labeled "Statement for

Insurance Reimbursement," which he then submitted to Blue Cross.  (Mintzer

Decl., Ex. 3, J.P. Dep. 77-80, 83, 88–90.)  Neither the Statements nor J.P.'s claim

forms indicated where J.P. and his family received the services, nor where

Timpone provided the services.  (<u>See, e.g.</u>, AR3157–62; Salkowski Decl. ¶ 4.)  Blue

Cross approved payments for those services by applying the payments against

the refund J.P. owed to Blue Cross.  (<u>See, e.g.</u>, AR3165-74.)

Unbeknownst to Blue Cross, at the time Timpone treated Plaintiffs,

Plaintiffs were in Minnesota and Timpone was in Arizona.  (J.P. Dep. 91-92;

Mintzer Decl., Ex. 4, M.K. Dep. 30-31.)  Plaintiffs received services primarily over

the telephone but also by remote video.  (<u>Id.</u>)  Timpone is not licensed to practice

in Minnesota or in Arizona.  (Salkowski Decl. ¶¶ 8-9.)

Because Timpone was a non-par provider, to pay for covered services provided by Timpone, Blue Cross usually would have issued payment in the name of the employee, J.P., and would have sent the payment to J.P. (Bazzarre Decl. ¶ 9.) Blue Cross would not have sent payment to either M.K. or L.P. (Id.) But because Blue Cross had overpaid J.P. based on the Change Academy claims, Blue Cross did not send a check; rather, Blue Cross applied the payment to the refund amount J.P. owed.

On November 15, 2018, Blue Cross sent J.P. an Explanation of Health Care Benefits ("EOB") regarding services that L.P. had received from Timpone. The EOB states that Blue Cross approved benefits with an allowed amount of $550, that the 20% coinsurance totaled $110, and that the "paid amount" totaled $440. (See, e.g., AR3165.) But the EOB added: "Payment has been reduced and applied to the refund requested from you by us. You have satisfied $440.00 of the $5550.00 amount owed." (Id.)

After receiving that EOB, J.P. initiated several phone calls to Blue Cross. In a December 3, 2018 call, Blue Cross provided J.P. the claim numbers which Blue Cross believed it had overpaid (for the Change Academy claims). (Mintzer Decl.

Ex. 15, Dec. 3, 2018 Tr. at 2–3.)  J.P. wrote the numbers down. (Mintzer Decl., Ex.

16, J.P. Notes.)  The follow exchange then occurred:

> J.P.: "That all makes sense."
> Blue Cross: "Okay."
> J.P.: "I understand what's going on."
> Blue Cross: "Okay."
> J.P.: "Those are the 14 claims, okay."
> Blue Cross: "Yep."
> J.P.: "Who made that decision to do that?  Does it say that, where
> that comes from, the finance department or who does that?"
> Blue Cross: "That's with collections, it looks like."
> J.P. "Oh."
> Blue Cross: "Yeah, so they received that directly from the collections.
> J.P.: "From collections.  Okay."
> Blue Cross: "Does that make any more sense to you? I just want to
> make sure you got clear answers on [*crosstalk*] --.
> J.P.: "I just wanted to – I wanted to document what was going on.

(Dec. 12, 2018 Tr. 3.)

> According to J.P.:

> In response to his receipt of this packet, J.P. telephoned Blue Cross's
> customer service line.  After several days of telephone contact with
> Blue Cross customer support, J.P. was told that Blue Cross's
> representatives that the $440 was applied by Blue Cross to the
> refund that Blue Cross claims it is owed arising from its partial
> payment for services rendered at Change Academy.  Further, J.P.
> was told that there are 14 previously paid claims, all generated by
> L.P. when she was being treated at the residential treatment center,
> for which Blue Cross intends to offset.

[Docket No. 1] Original Compl. ¶ 14; Mintzer Decl., Ex. 3, J.P. Dep. 147–48

(testifying that Paragraph 14 of the Original Complaint was accurate).)

On December 3, 2018, Plaintiffs' counsel, Jordan Lewis, emailed Blue

Cross's counsel, David Wilk, and wrote:

> I've attached an EOB that my client received for a different and unrelated service. It appears as if your client has unilaterally withheld payment of $5,500 and applied it to "the refund requested from you by [Blue Cross]." The client has asked for clarification and thus far he's learned nothing more. Please confirm whether this "refund" originates from the mental health services that are at issue in the pending case referenced above, and if it is, please provide whatever legal authority you have for this sort of "self-help." You should consider this a "meet and confer" respecting this issue.

(Wilk Decl. ¶ 3; Wilk Decl., Ex. 1 at 5.)

On December 7, 2018, Lewis wrote:

> On a related matter, your client has, again, offset its insurance obligations by deducting from it amounts at issue in this litigation. I've asked you for authority for this self-help. If you have any, I would appreciate seeing it.

(Id. at 1.) On December 13, 2018, Wilk responded:

> With respect to the recent EOBs, they do appear to be related to Blue Cross's overpayment of the behavioral health claims. Under the SPD (AR0236): "Payments made in error or overpayments may be recovered by the Claims Administrator as provided by law. Payment made for a specific Service or erroneous payment shall not make the Claims administrator or the Plan Administrator liable for further payment for the same Service."

(Id.)

## B.   Procedural History

### 1.   Claims

On December 26, 2018, L.P., by and through J.P., filed a lawsuit against

Blue Cross in this Court.  On April 16, 2019, J.P. and M.K. filed an Amended

Complaint against Blue Cross.  [Docket No. 19]  The Amended Complaint

alleges: Count 1: Plan Enforcement under 29 U.S.C. § 1132(a)(1)(B); and Count 2:

Failure to Provide Full and Fair Review as Required by ERISA under 29 U.S.C. §

1132(a)(3).

### 2.   Proposed Class

Plaintiffs now move for certification of the following class:

> All persons who are covered under any ERISA-governed health
> benefit plan insured and/or administered by Blue Cross against
> whom Blue Cross offset covered charges based on the following
> language found in the Blue Cross plan and/or certificate of coverage
> and/or summary plan description: "Payments made in error or
> overpayments may be recovered by the Claims Administrator as
> provided by law."

Blue Cross has identified 221 persons who have the same Payments Made

in Error Term in their SPDs and against whom Blue Cross may have recovered

an overpayment by not issuing a check on a later claim.  (Mintzer Decl., Ex. 19,

Def. Third Supp. Answer to Interrog. No. 5.)  Collectively, Blue Cross has

withheld payment of $275,965.00, out of the $378,841.78 it has overpaid.  (<u>Id.</u>,

Answer to Interrog. Nos. 7-8.)  Of those 221 persons, 51 participate in Medtronic,

Inc.'s ERISA plan, 10 participate in Cargill, Incorporated's ERISA plan, and 2

participate in The Travelers Indemnity Company's ERISA plan.  (Mintzer Decl. ¶

25.)  For those 63 members, Blue Cross withheld $115,001.38.  (<u>Id.</u>)  In addition to

those plan members, the proposed class includes participants in 81 other ERISA

plans, for a total of 84 separate ERISA plans.  (<u>Id.</u> ¶ 24.)

## III.    DISCUSSION

### A.    Standard for Class Certification

The class action serves to conserve the resources of the Court and the

parties by permitting an issue that may affect every class member to be litigated

in an economical fashion.  <u>Gen. Tel. Co. of the Sw. v. Falcon</u>, 457 U.S. 147, 155

(1979).  Whether an action should be certified as a class action is governed by

Rule 23 of the Federal Rules of Civil Procedure.

> To be certified as a class, plaintiffs must meet all of the
> requirements of Rule 23(a) and must satisfy one of the three
> subsections of Rule 23(b).  The Rule 23(a) requirements for class
> certification are: (1) the putative class is so numerous that it makes
> joinder of all members impractical; (2) questions of law or fact are
> common to the class; (3) the class representatives' claims or defenses
> are typical of the claims or defenses of the class; and (4) the

11

representative parties will fairly and adequately protect the interests of the class.

In re St. Jude Med., Inc., 425 F.3d 1116, 1119 (8th Cir. 2005) (citing Fed. R. Civ. P.

23(a)) (footnote and other citations omitted).

> Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.

Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).  At this stage, "[m]erits

questions may be considered to the extent – but only to the extent – that they are

relevant to determining whether the Rule 23 prerequisites for class certification

are satisfied."  Amgen Inc. v. Conn. Ret. Plans and Trust Funds, 568 U.S. 455, 466

(2013) (citations omitted).

**B.    Consideration of Blue Cross's Evidence**

      **1.    Declarations at Issue**

The Court denies Plaintiffs' request to strike the declarations of Blue Cross

witnesses Stacey Rice, Senior Lawyer at Cargill, Incorporated ("Cargill") [Docket

Nos. 96-97], Eric Salkowski, Principal Investigator at Blue Cross [Docket No. 92],

Thomas E. Bazzarre, IV, Director of Claims in Claims Operations at Blue Cross

[Docket No. 91], Amy Johnson, Senior Benefits Director, Americas, at Medtronic,

Inc. ("Medtronic") [Docket No. 90], and Robert Jasper, 2VP, Benefits at The

Travelers Indemnity Company ("Travelers") [Docket No. 89] on the grounds that

none of those witnesses were identified by Blue Cross in its Rule 26 disclosures.

### 2.    Legal Standard

The Federal Rules provide that

> a party must, without awaiting a discovery request, provide to the other parties:
>
> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

Fed. R. Civ. P. 26(a)(1)(A)(i).

The Rules further provide:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).

### 3.    Discussion

Plaintiffs note that Blue Cross's Rule 26(a)(1) disclosures state that

13

> [t]he Administrative Record . . . may reference individuals involved
> with these claims, including Plaintiff J.P.  To the extent a Blue Cross
> employee is needed to further address the information in the
> Administrative Record, Blue Cross reserves the right to select an
> appropriate corporate designee.  Because the causes of action in this
> case are governed by [ERISA], discovery is generally limited to the
> Administrative Record.

(Lewis Reply Decl., Ex. A at 1-2.)  Plaintiffs point out that none of the declarants

were involved in the administrative decision on Plaintiffs' claim.

The Rice, Johnson, and Jasper declarations are custodian declarations

attesting to the authenticity of the ERISA plan documents for Cargill, Medtronic,

and Travelers.  These documents are only relevant for class certification

purposes, not to Plaintiffs' individual claims or to Blue Cross's defenses to those

individual claims.  Regardless of whether the Court allows the declarations now,

if the Court were to certify the class, the Court would review the plan documents

for all 84 separate ERISA plans that apply to the class members in order to

interpret the application of the Payments Made in Error Term.  If the class were

certified, as to those class members to whom those plan documents pertain, those

plan documents are necessarily admissible, because they are embraced by the

Amended Complaint and are part of the administrative record as to those class

members.  Thus, the failure to reveal the names of the records custodians who

14

would aver to the authenticity of the plan documents for the class members is harmless.

Bazzarre's declaration repeats information that was revealed in Blue Cross's 30(b)(6) deposition, so its admission appears harmless, and he fits into the category of "an appropriate corporate designee," as stated in Blue Cross's Rule 26 disclosures, so he has been properly disclosed.

Salkowski's declaration relates to the licensure of Timpone and the question of whether the claim for her services was covered. Blue Cross did not know that this issue would be relevant until, during Plaintiffs' November 5, 2020 depositions, conducted after Plaintiffs had filed their motion to certify, Plaintiffs first revealed that Timpone was located in her residence in Arizona when she provided the services to Plaintiffs in Minnesota over the telephone and internet. Blue Cross alerted Plaintiffs to Salkowski in a timely manner by filing his declaration in conjunction with their opposition brief approximately two weeks after the depositions. Thus, the failure to reveal Salkowksi's name before Plaintiffs' depositions was substantially justified.

### C.   Numerosity (Rule 23(a)(1))

Numerosity is met when the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). It is undisputed that

numerosity is met in this case because the proposed class includes more than 200

individuals.

### D.       Commonality (Rule 23(a)(2))

Federal Rule of Civil Procedure 23(a)(2) requires that there are "questions

of law or fact common to the class."

> Commonality requires the plaintiff to demonstrate that the class
> members have suffered the same injury. . . .  Their claims must
> depend upon a common contention . . . .  That common contention,
> moreover, must be of such a nature that it is capable of classwide
> resolution—which means that determination of its truth or falsity
> will resolve an issue that is central to the validity of each one of the
> claims in one stroke.

Dukes, 564 U.S. at 349–50 (citation omitted).

The Court concludes that Plaintiffs have failed to show commonality.

In construing a plan, the Court "begin[s] by examining the language of the

plan documents." Bond v. Cerner Corp., 309 F.3d 1064, 1067 (8th Cir. 2002).  A

claim, such as Plaintiffs', brought under § 1132(a)(1)(B) "stands or falls by the

terms of the plan."  Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan, 555 U.S.

285, 300 (2009).  ERISA requires that a plan be established pursuant to a "written

instrument." 29 U.S.C. § 1102(a)(1).  At a minimum, there must be a "summary

plan description" ("SPD").  29 U.S.C. § 1024(b)(1).  Some plans also have master

documents, commonly referred to as "wrap" documents, in addition to the SPD.

16

See, e.g., Admin. Comm. of the Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Gamboa, 479 F.3d 538, 540 (8th Cir. 2007).

In Cigna Corp. v. Amara, the Supreme Court held that, if there is a conflict between an SPD and the wrap, the wrap controls.  563 U.S. 421, 438 (2011).  The Supreme Court explained that the "objective" of an SPD was

> clear, simple communication.  To make the language of a plan summary legally binding could well lead plan administrators to sacrifice simplicity and comprehensibility in order to describe plan terms in the language of lawyers.

Id. at 437 (cleaned up).  The Supreme Court thus concluded "that the summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan for purposes of § [1132(a)(1)(B)]."  Id. at 438 (emphases in original).  After Amara, if there is a summary plan description and a plan document, the terms of the summary plan description are not part of the plan.  MBI Energy Servs. v. Hoch, 929 F.3d 506, 510 (8th Cir. 2019).  However, "in the absence of a formal plan document," "the SPD is the Plan's written instrument because it is the only document providing benefits."  Id.

As to each class member, the Court must determine if there is a separate wrap document and, if so, whether that document has additional or different

language relevant to each class member's claim.  Blue Cross notes that, for

example, 51 putative class members are participants in a health plan sponsored

by Medtronic.  Medtronic's wrap contains a provision specific to the "Recovery

of Erroneous Claim Payments:"

> Unless a Component Plan specifies otherwise, the Plan has the right
> to deduct from any claim payment properly payable under this Plan
> or any Component Plan to a Covered Person the amount of any
> previous claim payment that was made . . . in error . . . .  If such a
> deduction is appropriate, the deduction will be applied to a claim
> submitted by any covered family member regardless whether the
> erroneous claim payment was made to or on behalf of the same or a
> different family member.

(Johnson Decl. ¶ 3, Ex. 1, Medtronic Group Insurance Plan at 15, ¶ 5.3.)  Given

this relevant wrap language, the analysis of the claims of putative class members

who participate in the Medtronic plan will be wholly distinct from the analysis of

Plaintiffs' claims.

Ten putative class members are participants in a health plan sponsored by

Cargill with relevant wrap language.  (See Rice ¶ 4, Ex. 2, Cargill, Incorporated

Welfare Benefit Plan (2018) at 14, ¶ 9.8.)  Two putative class members are

participants in a health plan sponsored by Travelers that includes relevant wrap

language.  (See Jasper Decl. ¶¶ 2–3; Jasper Decl., Ex. 1, The Travelers Trusteed

Employee Benefit Plan at 12, ¶ 6.4.1.)

18

For each of the aforementioned putative class members to recover, they would need to establish that their particular wrap language does not empower Blue Cross to withhold additional payment.  Even where an employer does not maintain a separate wrap, the SPD must be construed along with other plan documents, which will also vary from plan to plan.  Those documents might include, for example, the service agreement between the employer and Blue Cross.  See 29 U.S.C. § 1024(b)(4) (plan participants may obtain copies of "other instruments under which the plan is established or operated").

In order for there to be a common question regarding Blue Cross's authority to offset, the Court would need to know that all class members participated in plans with only SPDs and no other plan documents with relevant terms.  If some class members participate in plans that have formal plan documents, then the SPD does not control, and the question of whether Blue Cross was entitled to offset must be answered by examining the particular language of that class member's formal plan documents.  The evidence before the Court is that many class members did participate in plans with wrap documents that control over the SPD and govern whether Blue Cross had the authority to offset against any family member's claims.  Individualized inquiry into 84 sets of

19

different plan documents to determine Blue Cross's authority to offset in each

plan is incompatible with a finding that the commonality prong has been met.

The Court has already denied Plaintiffs' request to strike the Johnson, Rice,

and Jasper declarations.  The Court further notes that striking these declarations

would not change the Court's determination.  The fact that the putative class

members belong to 84 different ERISA plans is in evidence through the

declaration of Joel Mintzer, which Plaintiffs do not challenge.  And Plaintiffs, not

Defendant, have the burden of showing commonality.  Even if Plaintiffs

successfully eliminated evidence of the contents other putative class members'

plans from the record, they will not have met their burden to show commonality,

because Plaintiffs have offered no evidence that the 221 class members in 84

plans all have the same plan language as it relates to Blue Cross's ability to offset.

Thus, even if the declarations are struck, the Court would simply have no

evidence one way or the other that class members share common plan language,

and Plaintiffs would not have met their burden to show commonality.  See, e.g.,

In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig., No. MDL 09-2074, 2014

WL 6888549, at *9 (C.D. Cal. Sept. 3, 2014) (denying motion to certify a class of

persons participating in differing ERISA plans and noting that the defendant

plan administrator "does not have the burden of showing that commonality is

absent . . . .  Plaintiffs have the burden of showing that there is a common issue of

law or fact that would support class certification [and] [t]hey have manifestly

failed to carry their burden, as they have not offered any meaningful analysis of

the relevant terms in [the defendant's] ERISA plans").

Finally, the Court rejects Plaintiffs argument that the lack of commonality

can be solved by eliminating putative class members who belong to the

Medtronic, Cargill, or Travelers plans from the class.  Plaintiffs bear the burden

of showing commonality, and they have submitted no evidence that the

remaining putative class members participate in plans that do not have relevant

wrap documents or other plan documents that might control whether Blue

Cross's offsetting was permitted under their particular plans.  See Huffman v.

The Prudential Ins. Co. of Am., No. 2:10-cv-5135, 2018 WL 583046, *4 (E.D. Penn.

Jan. 29, 2018) ("This Court cannot ignore wrap plans, SPDs, and other documents

that may collectively comprise a plan, and as a result, would have to analyze

each of the 2,200 plans individually to determine the scope of Prudential's

obligations, and therefore whether it breached any fiduciary duty.").

   **E.     Typicality (Rule 23(a)(3))**

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3). "The burden is fairly easily met so long as other class members have claims similar to the named plaintiff.  Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory."  <u>Alpern v. UtiliCorp United, Inc.</u>, 84 F.3d 1525, 1540 (8th Cir. 1996) (citations omitted).  "A proposed class representative is not adequate or typical if it is subject to a unique defense that threatens to play a major role in the litigation."  <u>In re Milk Prod. Antitrust Litig.</u>, 195 F.3d 430, 437 (8th Cir. 1999).

The Court holds that Plaintiffs cannot show that they are typical and adequate class representatives because they are subject to major and unique defenses.

### 1.    Whether Plaintiffs Are Members of the Proposed Class

"A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court."  <u>Sosna v. Iowa</u>, 419 U.S. 393, 403 (1975).  Blue Cross asserts that Plaintiffs are not members of their proposed class.  The proposed class consists of persons "who are covered

22

under any ERISA-governed health benefit plan insured and/or administered by Blue Cross against whom Blue Cross offset **covered charges**" (emphasis added) based on the Payments Made in Error Term in the SPD.  Blue Cross argues that, here, the charges against which it applied offsets were not covered charges because the provider (Timpone) was not properly licensed to provide those services to J.P., M.K., or L.P.

The evidence in the record shows that, at the time Plaintiffs received services from Timpone, Timpone was located at her residence in Arizona, and Plaintiffs were located in Minnesota.  Plaintiffs' SPD states, in part, that the plan covers mental health care services "provided by a Health Care Provider." (Mintzer Decl. Ex. 1 at AR2695–96.)  A "Health Care Provider" is defined as "[a] health care professional, licensed for independent practice, certified or otherwise qualified under state law, in the state in which the Services are rendered, to provide the health Services billed by that health care professional."  (Id., at AR2750.)  The plan also excludes from coverage "Services that are not within the scope of licensure or certification of a provider," and "Services that are prohibited by law or regulation."  (Id., at AR2706.)  Blue Cross concludes that,

because Timpone was not licensed in Minnesota (or Arizona) to treat J.P., M.K., or L.P., those services are not covered.

Blue Cross raises a strong argument that there will be extensive attention and time spent on the unique defense of whether Plaintiffs are even members of the class that they propose, because Timpone was not licensed in either Arizona or Minnesota at the time, so the services she provided were not covered under the SPD.

Plaintiffs correctly note that Blue Cross did not fail to pay the Timpone claims based on lack of coverage; rather, Blue Cross indicated that the claims were covered but failed to pay based on offset for the Change Academy overpayments.  However, the current question is whether Plaintiffs are members of the class that they have defined as only including persons whose offset was applied against "covered" claims.  Plaintiffs will not be typical or adequate class representatives if they are not part of the class because the claim to which the offset was applied was not, in fact, "covered," regardless of how Blue Cross treated the claim at the time.  Regardless of the outcome of this issue, it is a unique defense that threatens to entail significant attention and resources.

### 2.   Exhaustion

Blue Cross also persuasively argues that Plaintiffs' failure to exhaust administrative remedies presents a unique defense that will be a major focus of the litigation.

"Where a claimant fails to pursue and exhaust administrative remedies that are clearly required under a particular ERISA plan, his claim for relief is barred." Chorosevic v. MetLife Choices, 600 F.3d 934, 941 (8th Cir. 2010) (citation omitted).  See also Jones v. Aetna Life Ins. Co., 943 F.3d 1167, 1168-69 (8th Cir. 2019).  In this case, Plaintiffs' plan requires exhaustion: "**These Claims procedures must be exhausted before any legal action is commenced.**" (Mintzer Decl. Ex. 1, at AR2740 (emphasis in original).)

This Court concluded, on a motion-to-dismiss record, that Plaintiffs had adequately pled that they were deemed to have exhausted those remedies because Blue Cross's EOBs did not comply with regulations requiring sufficient specificity regarding the reason for the offset and citation to a specific plan provision providing authority for the offset.  ([Docket No. 41] R&R at 9-12; [Docket No. 49] Order adopting R&R.)  The Court's decision did not preclude Blue Cross from reasserting exhaustion on summary judgment or at trial based on a full evidentiary record.

25

The Eighth Circuit has "applied a substantively equivalent standard [to the substantial compliance standard], evaluating whether a plan's entire claim denial process provided the claimant a full and fair review of her claim."  Grasso Enters., LLC v. Express Scripts, Inc., 809 F.3d 1033, 1038 (8th Cir. 2016) (citation omitted).  In evaluating a claim denial process, the Court may look at the entirety of communications, including oral communications.  See, e.g., Lafleur v. La. Health Serv. & Indem. Co., 563 F.3d 148, 154 (5th Cir. 2009), cited with approval in Grasso Enters., LLC, 809 F.3d at 1038.  See also Davidson v. Prudential Ins. Co. of Am., 953 F.2d 1093, 1096 (8th Cir. 1992).  Blue Cross raises a strong argument that Plaintiffs failed to exhaust administrative remedies.  Plaintiffs correctly note that, in an ERISA class action, the Court has discretion to hold that only the class representatives need to have exhausted administrative remedies.  However, this rule does not ameliorate the fact that Plaintiffs must have exhausted.  Here, there is substantial evidence that, based on the full extent of communication between J.P. and his attorneys and Blue Cross both in writing and by telephone, J.P. "had adequate notice of why his claim was denied, how to seek review of the decision, and what additional information would assist in the review process."  Davidson, 953 F.2d at 1096.  Litigation of this issue threatens to be a major component of

this litigation.  The existence and strength of this defense weighs strongly against

Plaintiffs being typical and adequate class representatives.

### F.    Adequacy (Rule 23(a)(4))

#### 1.    Adequacy Standard

Named Plaintiffs are adequate representatives if they "have common

interests with the members of the class, and . . . will vigorously prosecute the

interests of the class through qualified counsel."  Paxton v. Union Nat. Bank, 688

F.2d 552, 562–63 (8th Cir. 1982).  The parties do not dispute the adequacy of

Plaintiffs' counsel to litigate this case.

> The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts
> of interest between named parties and the class they seek to
> represent.  [A] class representative must be part of the class and
> possess the same interest and suffer the same injury as the class
> members.

Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 625–26 (1997) (citations omitted).

#### 2.    L.P. Lawsuit

The Court holds that class certification is inappropriate based on a lack of

commonality and typicality.  Additionally, the Court notes that there are

substantial questions regarding Plaintiffs' adequacy as class representatives, both

because they are subject to unique defenses that threaten to overtake this

litigation and also due to the unique procedural posture of this case due to the pending L.P. Lawsuit.

Due to the parallel L.P. Lawsuit, Plaintiffs face different motivations and incentives than the putative class.  Plaintiffs argue that, if they prevail in the L.P. Lawsuit and Blue Cross returns the money to them, they still can pursue Count 1 in this case because 29 U.S.C. § 1132(a)(1)(B) allows plaintiffs to bring suit "to clarify [their] rights to future benefits under the terms of the plan."  However, in Count 1 of Plaintiffs' Amended Complaint, they explicitly "seek unpaid benefits in the amount withheld or offset by Blue Cross, and interest back to the date their claims were originally submitted to Blue Cross."  (Am. Comp. ¶ 47.)  Moreover, the proposed class is limited to persons who have had claims offset in the past, and, thus, have a monetary claim for recovery.  Thus, if Blue Cross loses the L.P. Lawsuit and pays back the money it offset with interest, Plaintiffs have little incentive to pursue Count 1.  At a minimum, their interests diverge from the rest of the class members, who all seek recovery of money that was allegedly improperly offset.  On the other hand, if Blue Cross prevails in the L.P. Lawsuit, its counterclaim will be addressed, which raises the question of whether it was entitled to recoup the money paid on the Change Academy claims.

### G.    Rule 23(b) Requirements

Because the Court concludes that Plaintiffs cannot meet the Rule 23(a)

requirements for class certification, the Court need not address the parties'

additional argument pertaining to Rule 23(b).

Accordingly, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED**:

Plaintiffs' Motion for Class Certification [Docket No. 74] is **DENIED**.


Dated:   January 14, 2021                    s/ Michael J. Davis
                                             Michael J. Davis
                                             United States District Court